Our eighth case this morning is United States v. Clark. Ms. Barnard. Good morning. May it please the court. Sarah Barnard for Ricky Clark. Mr. Clark's statements in this case were unwarned and involuntary because of the failure in this case to properly and fully advise Mr. Clark of his rights under Miranda and the officer's conduct in this case to offer Mr. Clark some version of Miranda but then to refuse to honor his attempts to invoke those rights. Are you arguing that just the fact that he told him he had the right to an attorney turned this into a custodial interrogation? No, Your Honor. I'm arguing that based on the totality of the circumstances that this court looks at the facts and circumstances as a whole anew in this case and that the factors line up and that is a factor that tips the scale in his favor. It is not merely that factor alone. So you're saying that is one of the factors the court should look at in the totality of the circumstances to determine if he was in custody? Yes, Your Honor. And I think that it's really important for the court to look at that factor in the totality of the circumstances because you can't ignore that fact. This court has already said in Spratzy that if you engage in some of the formalities of a custodial arrest without actually telling someone that they're not under arrest that that could be a factor that weighs toward custody in those circumstances. But the court didn't identify giving Miranda rights or advising someone of a right to counsel that that was one of those factors, did it? No, but Miranda is a factor that has some of the formality of an arrest. So under the totality of the circumstances the court should look and see out of all the facts and circumstances in this case would a reasonable person feel that they were in custody. And in this case we have officers not fully Mirandizing but giving some effort at Miranda but then refusing to honor that. And there are very important reasons I think that this court should look carefully at that. As the Indiana court adopted in Bean when they adopted this court's reasoning saying we too think that offering Miranda rights has import in the custody analysis. Now what is the purpose of Miranda if you're going to offer someone Miranda rights and then refuse to honor them? If you're saying that they're not in custody you've turned Miranda on its head. You can't then later, an officer then can't. I could see your argument if they gave full Miranda rights. But they didn't. Just talked about the right to counsel. That's all they did. You can't talk to a lawyer. You don't have to talk to us. There's no question about that. That sounds, that doesn't convey it seems to me the same message to the defendant. It tells him he can not talk to them. He can talk to a lawyer first if he wants. But it's not the same as reading somebody their Miranda rights. That tells somebody they're in custody. I can see your point there but I can't see it with respect to what happened here. So I think it's particularly when you have someone, when we're trying to look at the total facts and circumstances of the case, he's told once at the beginning of the interview you don't have to talk to us. Then as the interview goes along and Mr. Clark starts to get nervous he says I think I need a lawyer. What is missing from this case is if the officers in this case did not believe that Mr. Clark was in custody at that time, there could have been statements that they could have made to rectify that at that point. They could have said, whoa, let's take a step back here. You understand that you're not in custody. You know you don't have to talk to us. You could ask us to leave if you want to. If you feel like you need a lawyer, you can ask us to go. They didn't do that. Instead what they did was offer him a right. They said you have the right to an attorney. I think that statement has special meaning when it comes from an officer. Ms. Varner, if we took the whole issue of right to counsel out of the picture, if we assumed for the sake of argument that the right to counsel never came up, other than that the interview proceeded as it's all set out in the appendix, would you have a case? I think at that point we would not have as strong of a case in front of the court. I think that there were factors that were ignored by the district court, and the primary factor that I think tips the scales in our favor is offering Miranda rights and refusing to accept his invocation of those rights. That's a substantial extension of the doctrine, of current doctrine. It would require officers engaged in a non-custodial investigation, questioning of a suspect, a voluntary non-custodial questioning of a suspect, to ask clarifying questions, give clarifying information, give other prophylactic warnings that are not required by current doctrine. So this case represents, if we were to rule for you, a substantial extension of the doctrine. I think this case is special. I could not find a case that exactly mirrors these circumstances. What you most often find is a case where it's not custodial, but they've offered full Miranda rights. They signed a waiver, and then the issue in the case might become, did they try to invoke a right or not, or were they actually in custody? But when an officer offers it and they're not in custody and then refuses to honor it and then doubles down again and says, you do have the right to an attorney, you do have the right to remain silent, and then refuses to honor it, I think in those circumstances this court should draw a line and say, we are not going to encourage officers to sort of make the defendant feel more comfortable in an interrogation by sort of pretending that we're going to offer them rights, but then pulling the rug out from underneath them when they try to actually assert a right. We're not going to let officers who are more concerned with gathering physical evidence at the end get a confession from someone under these coercive tactics. I think this case, I could not find a case that was directly on point for this. Because that's because there are no constitutional limitations on noncustodial questioning. The only constitutional limitations that exist are for custodial questioning. That's right, Your Honor. So that's why this case, if we were to rule for you, would represent a substantial extension of the doctrine. By virtue of even mentioning the right to counsel, a noncustodial questioning session is transformed into a custodial setting that requires full-blown constitutional warnings. I don't think it's just the mentioning of the right to counsel. It's the totality of the circumstances here. He's told once at the beginning of the interview, you don't have to talk to us. Then no Miranda rights are given. He's never given a full set of rights. Because it's not required. Right. But then when he tries to assert a right, the officer, instead of saying, this is... He's asserting a right that doesn't exist in this context. Wouldn't we also, if we ruled with you, be discouraging officers from telling defendants that they do have a right to a lawyer when they mention they may want one? I'm not sure that's what we want to do. I think that we want to encourage officers to give full Miranda rights. But I think we're under special circumstances that if you give full Miranda rights and you continue to reiterate to that person that that right exists and you don't stop the questioning and you don't ask them, do you understand that you're not in custody? Let's step back a little bit. Miranda doesn't apply to non-custodial questioning situations. Correct, Your Honor. So there is no constitutional right at issue in a non-custodial setting. But the fact that the district court completely ignored the factor. This court has said having these formalities of custody is important. And the fact that the district court completely ignored that factor is important. And I think if the court wanted to instead, as the government suggested in their brief, remand the case and ask the district court, look at everything else that you looked at in this case, but also fold in the fact that he was told repeatedly by the officers, you have the right to an attorney. And when he tried to assert the right, they didn't honor it. And is that important in your analysis or not? Would you like to save some time? I would like just to reserve the rest of my time. Thank you, Your Honor. Mr. Bates. May it please the Court. Brian Rites for the United States. We would start. We agree, Judge Sykes. I think any ruling in favor of Mr. Clark would require an expansion of the doctrine. By Mr. Clark's own argument. What doctrine? That giving of a Miranda warning, either part or whole, in a non-custodial setting renders that non-custodial setting custodial. Here I think looking at the normal house factors or the factors that delineate custody and non-custody generally, they all point in favor of a non-custodial situation here. Mr. Clark's argument is essentially that by giving a part of a Miranda, or I guess all of a Miranda in a different case, that converts a non-custodial situation into a custodial situation, which is not correct under general federal law. That's not what this Court has said. Mr. Clark cites Sprosty, but Sprosty said that it could be a factor when there's prolonged attention and persistent questioning, which is not the case here. So this case doesn't include the context where those certain formalities might give rise to a custodial situation. In the colloquy with your colleague, there was a mention made of the fact you could never have a coerced confession without custody. Is that correct? Well, those questions are separate, so I'm not sure. Yeah, they are. They've always been separate. That's why I was rather taken by that remark. Yeah, I don't think that's actually doctrinally correct. I think you certainly could. Now, of course, I mean it might be kind of strange because a lot of the things that might coerce a person would rise under custody. It might, in the process of coercion, convert it into custody. I guess I could see that, but I think doctrinally those questions are different. Yeah, okay. As long as the government sees the fact that doctrinally they're separate. Yeah, I think we view those as sort of the two pillars in this, is custody and voluntariness in this area of the law. And I think we're safe on both, but I think, of course, the easiest resolution for this case is that there was no custody here when a person is questioned at home for a few minutes with their mother present, the tone of voice, the police use. Does the district judge hold a hearing on this question, or was this all done on paper? This was the papers, Your Honor. This was done on paper? Yes, Your Honor, I believe so. And we got a couple of paragraphs there. Yes, I think the findings were sufficient. I must say that I'm concerned about the sufficiency of the findings and these bromides like, well, it was at home so it must have been okay. Should we take that as an irrebuttable presumption in this area? You see it sprinkled in these findings all the time. I mean, it may have been or it may not have been, it seems to me, depending on the circumstance. I think there are two points there. Let me start with the findings and then I'll get to the home portion. I think the findings are sufficient anyway, but here there really isn't much of a factual dispute, which I think is part of the reason the findings are as they are. I think the parties agree that the facts are what they are, so it was just a legal determination. I think that's the reason that drove a lot of the findings in this case, is it's just about the law. Now, as to Your Honor's point about the home, the government's not. I'm sorry, as to? Your Honor's point about interviews in a home. The government isn't asking for ruling that every single interview in a home is noncustodial. That's not what the precedents say. Usually the home points towards noncustody. On the other hand, the intrusion into a home under some circumstances could be very coercive. Yes. In general, when the court has found that, there's been something extra. Be it. Depending on what time of day you show up and how insistent you are in staying. Yes. The couple of cases, examples cited by Mr. Clark, would be one where multiple officers come, arms drawn, leaves the battering ram, or another situation, a person comes home and the police officers are already in their home. These types of situations, yeah. I think we're not asking for a bright line rule about the home. But in general, home is going to be more likely to fall on the side of noncustody because the person is going to be more comfortable there. Because, again, I want to circle back on that to the standard. The standard is to prevent the inherently coercive atmosphere akin to a station house. And generally the home is not going to be akin to a station house. There may be certain circumstances where a putative defendant would much rather discuss it down at the station or in his office than he would like to do this in his home. That very well may be true. I think that concern is somewhat subjective and the test here is objective. This particular offense involved here may be one that, under certain circumstances, one would not want to discuss before one's family. I could see that being possible, but that factor here weighs in favor of noncustody because the police officers gave Mr. Clark the choice to discuss privately or with his mother present. My point is the use, the district judge's use and the party's use of this bromide about the presumption of regularity just strikes to me as rather strange and just one of those things we throw in and pellet yap yap. I guess my brief, we didn't intend to say that there is necessarily a presumption. I think most of the time it will fall on the line of noncustody and we would push it into noncustody. What do you, what is the duty of the district judge and with respect to making, determining whether there's a custodial situation or not? How would you like to think we ought to describe that in an opinion? I think that the judges should apply the law as stated, using the house factors, using the factors that this court has given, apply the facts of the case to those. I would disagree to the, I guess implicit assertion by Mr. Clark. There's some checklist that the district court has to go check by check, say this does, this doesn't, it's totality of the circumstances. I, you know, there are probably innumerable factors that could weigh in the totality of the circumstance. This and the district court judge doesn't necessarily have to like put each one in a ledger on each side. This isn't a sentencing mitigation argument where the district court judge has a duty to specifically address every mitigation argument that a defendant raises. This is an attempt to use all the facts to get, to get to a broader conclusion under the totality of circumstances, whether it was custody or not. And that may sometimes require going a checklist on everything. Sometimes it doesn't. I think here when essentially all the factors that the courts have identified as most relevant point in the favor of non-custody, there's less. I don't want to take up all your time and I do appreciate your, your response. Okay. Thank you. Here. I think it was certain, not that it wouldn't have been the district court's order wouldn't have been sufficient in other contexts, but it certainly was sufficient here where all the normal factors that courts look to point towards a non-custodial setting. The police aren't required to stop an interview when the subject of the interview requests counsel. If it's non-custodial. Correct. Your Honor. The, these sorts of requests are I don't. So there is no right to counsel in a non-custodial setting. No. So the fact that the police then said, yeah, you do have the right to counsel was actually going a step further than they even needed to. They, they could have under the law ignored that. It's a misrepresentation. He doesn't ever, he does not have a right to counsel. It's correct. He did not have a right to counsel at that point in time. And I don't think as Judge Sainee have pointed out, I don't think we should discourage the police from saying you can talk to the police. I agree. The right to counsel is an incorrect phrasing. You have the ability to stop the conversation and talk to the police would be technically accurate under the law. And so I, maybe that would be. Well, that's also a misrepresentation because it suggests that the officers have a duty to stop the interview. Yes. They don't even have the officer. That's not correct either. I think the officers were, they were incorrect on that, but they were in an attempt to be overly generous to overly solicitous to Mr. Clark. And that certainly shouldn't be held against. They have a duty to leave if they're asked to leave. Yes. That would be their duty. If Mr. Clark said, I'm done talking to you, you must leave my house. They have the duty to do that. Right. Of course. Right. But they don't, it's, you know, they don't have to ask clarifying questions about the invocation. If it's ambiguous, et cetera, that, that applies only. That doctrine applies only in a custodial setting. Yes. You can throw them out. Yes, we can. I'm done. Yes. Okay. We never reached that point here. Right. Was there ever a request for a hearing here? It didn't seem like there was because they had the transcript of the questioning. Yeah, I think. Correct. I think everybody, there really wasn't a factual dispute for the most part. So I think none of the parties necessarily saw it as necessary. There are no further questions. The government would ask this court to affirm the district court. Thank you. Ms. Garner. Your Honor is correct that there is no right to an attorney in a non-custodial arrest. But the question before the court is when an officer says you do have the right, must the district court consider that? Would it consider whether or not the defendant was in custody? And it's our position that the district court failed to consider that and that's an important factor. Lastly, I wanted to say that if I misspoke and said that the voluntariness of the confession rose and fell with this counsel question and with the custody, that's incorrect. We are asking this court, even if you believe that Mr. Clark was not in custody at this time, to find that in these situations where an officer does say you have a right and refuses to then honor that right, that you would find that statement to be inconsistent. I also understood you to say in answer to my question that you really didn't have a very good case on the involuntariness that the counsel situation was taken out of the problem, out of the factual context here. What I understood you to be asking me was would I have a different case without the question of counsel? Your Honor said it was a weak one. But the voluntariness of the case includes the question of the facts in this case. I don't think there was a voluntariness challenge in the suppression motion here. It was just a Miranda challenge, right? In the district court, yes, it was, Your Honor. Right. So there was just a Miranda violation that was alleged in the district court. I don't think we can repackage it as a voluntariness coercion case. You never alleged involuntariness of the statements independent of the Miranda? I don't believe that was alleged in the district court, no. So for these reasons, we would ask you to reverse the holding of the district court on the suppression in this case and return it to the district court. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.